STATESMAN INSURANCE COMPANY *v.* KENNETH REIBLY, d/b/a
REIBLY CLOTHING STORE

[No. 2-876A312. Filed January 19,1978. Rehearing denied February 16, 1978.
Transfer denied May 11, 1978.]

*Tom F. Hirschauer, George Wildman, Miller, Tolbert, Hirschauer & Wildman,* of Logansport, for appellant.

*Richard M. Rhodes, Rhodes & Price,* of Peru, for appellee.

SULLIVAN, P.J.— On September 3, 1972, Kenneth Reibly's clothing business was damaged by fire. He contacted the agent (Birk) who had procured for him a fire insurance policy (issued by the Statesman Insurance Company) and was told not to worry, that he (Birk) would take care of it. Birk hired a contractor to repair the building and later gave Reibly a check for $2500, representing a $2000 advance to be paid the contractor and $500 for Reibly's expenses in moving his merchandise to another location. Birk told Reibly to prepare an inventory of the damaged goods for purposes of ascertaining the amount of loss sustained. At the insistence of Statesman's claims adjuster (Kachel), a total of three inventories, successively revised downward, were prepared, apparently because of the adjuster's belief that Statesman would pay only for those items which showed visible damage. About two or three weeks after the fire, Statesman offered to pay approximately $800 in full settlement of the claim, the loss being computed upon the last inventory submitted. Reibly refused.[1]

Apparently, negotiations continued and sometime in early December, 1972, Statesman (through Kachel) offered the sum of $7,400 in full settlement of the claim.[2] On December 21, Reibly's then attorney, H. Frank Welke, wrote Kachel that the offer was accepted by his client. On December 26, Birk delivered a formal "Proof of Loss" form to Reibly and stated that it had to be signed, notarized and returned before any further payments could be

---

1. The settlement offer was based upon retail price less 40% mark-up multiplied by a percentage representing the degree of damage to the items according to their proximity to smoke and water. It should be noted that deduction of 40% from the retail price does not reflect plaintiff's costs of inventory, e.g., cost $100 + 40% = $140 retail price but retail price $140 less 40% equals $84. It was not, therefore, unreasonable for Reibly to reject the offer.

2. From this figure was to be deducted the $2500 advance and $3403 for damage to real property (which was eventually paid to the assignees of Reibly's land sale contract), leaving approximately $1500 to be paid for damage to the inventory.

made. The formal "Proof of Loss" form was never returned and, on March 22, 1973, Reibly received the following letter:

"March 22, 1973

Mr. Kenneth Reibly
110-112 South Broadway
Peru, Indiana

Dear Mr. Reibly:

This letter is relative to your fire loss of September 3, 1972 and the Proof of Loss for the forementioned fire left with you by Mr. Burke [sic] on December 26, 1972.

Your policy requires that a Proof of Loss be submitted within 60 days of the loss. Please consider this letter your formal notice that if Proof of Loss is not submitted to the company for their consideration by June 1, 1973 your claim will be denied for failure to comply with the policy provisions.

Very truly yours,
W. C. Kachel,
Manager"

Reibly testified that he thought his "Proof of Loss" was the inventory previously filed with Kachel and, therefore, he ignored the letter. He also disavowed the authority of his former attorney to accept the offer of settlement from Statesman. Reibly further testified that Birk told him that all damaged merchandise would have to be sold before there could be a settlement of the claim. Reibly stated that it took about one year to dispose of his inventory and that he informed Birk that the proceeds amounted to almost $2600. However, Reibly also testified that his last contact with Kachel was one month after the fire and that his last contact with Birk was about three months later. Birk corroborated this latter testimony. The record contains no indication that after Reibly informed Birk of the proceeds from liquidation (and there is no evidence as to when this occurred), he (Reibly) was in contact with any representative of Statesman until March, 1975, when this lawsuit was initiated.

Reibly's complaint asked $30,000 actual and $50,000 punitive damages. The trial court withdrew the punitive damages issue from the jury, which returned a verdict for Reibly in the amount

of $10,400. Statesman has appealed, denying liability on several grounds.

We need not decide whether the 60 day period for filing of a "Proof of Loss", if waived by Statesman's conduct, representations or negotiations with regard to the inventories, was revived by the letter of March 22, 1973 because we deem the dispositive issue to be whether there is sufficient evidence of probative value from which the jury could infer a waiver of, or an estoppel to assert, the following provision of the policy between Reibly and Statesman:

> "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss."

It is undisputed that the lawsuit in question was not filed within "twelve months next after inception of the loss." However, Reibly contends that Statesman waived, or is estopped to assert the foregoing provision of the policy. Reibly argues that the $2500 advance for the contractor's work and his (Reibly's) moving expenses, coupled with Birk's statement that the damaged merchandise had to be sold before final settlement provides evidence from which the jury could infer that Statesman would not insist on compliance with the one-year limitation of actions provision.

It is well-settled that contractual provisions which limit the time within which suit may be brought, while not favored, are valid. *Caywood v. Supreme Lodge* (1908), 171 Ind. 410, 86 N.E. 482. However, such provisions may be waived or the insurer may embark upon a course of conduct which results in an estoppel to assert the provision as a defense. *Continental Ins. Co. v. Thornburg* (1967), 141 Ind. App. 554, 219 N.E.2d 450, 453. The question is "whether anything has been done in the relationship between the insurer and the insured which would cause the insured to reasonably believe the limitation period will not be insisted upon. [citations omitted]" *Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985, 991.

There is nothing of record evidencing any intention to waive such provision. Further,

"... the conduct relied upon to operate as a waiver or estoppel must have continued either to or very near the end of the period of limitations, or, as it is more frequently stated, that there cannot be a finding of waiver where a reasonable time remains in which to bring suit within the period of limitations after the claimant is no longer justified in relying upon the conduct of the company, because of a denial of liability, refusal to pay or other circumstances from which the termination of negotiations should have been inferred." Annot., 29 A.L.R.2d 636, 650 (1953).[3]

Thus, even assuming, *arguendo*, that computation of the one-year period did not begin until Reibly's last contact with Birk, which we assume occurred in late 1973, there remains an unexplained lapse of at least eighteen months before the filing of this lawsuit. Nothing of record indicates that there was any contact between Reibly and Statesman during this period. A waiver or estoppel cannot be inferred from Statesman's mere silence.[4] Nor does the evidence sustain the inference that Statesman's conduct caused Reibly to delay the filing of this lawsuit until after the expiration of the limitation period.

*Huff v. Travelers Indemnity Co., supra*, does not dictate a contrary result. In *Huff*, negotiations between the insurer and the insured continued well beyond one year from the date of the loss. Indeed, the insurer requested further information from Huff regarding his claim after the twelve-month period had expired. Thus, when

"... *liability was not denied* until long after the twelve-month period, ... the insurer [had] waived his right to insist on [compliance with the] provision. To hold otherwise would be to allow an insurer to lull an insured into not pressing his rights and then to deny liability on the basis of the limitation period." 363 N.E.2d at 992 (emphasis in original).

---

3. There is authority to the effect that time spent in negotiation between the parties is excluded in computing the time within which suit must be brought. *See* Appleman, 20A *Insurance Law and Practice* § 11635 (1963).

4. Statesman had no duty to inform Reibly of his responsibilities under the insurance contract or that it intended to assert the one-year limitation of action provision as a defense. *See* Appleman, *supra*, at § 11639.

By contrast, Reibly had no contact with Statesman or its agents for at least eighteen months prior to the filing of this lawsuit. He was aware of the policy provisions and was represented by counsel continuously from the date of the fire. There does not appear to be any contact or negotiation occurring beyond the twelve-month period. There is no evidence justifying a reasonable belief that Reibly was "lulled into not pressing his rights."

Clearly, there remained a reasonable time within which Reibly could have timely filed suit. Yet he delayed at least eighteen months from his last contact with the insurer to do so. He has offered no explanation, either at trial or in his brief, for the extended delay in bringing this action. Thus, we are compelled to hold that the evidence leads to but one conclusion, contrary to that reached by the jury. *See Blankenship v. Huesman* (1977), 173 Ind. App. 98, 100, 362 N.E.2d 850, 852. Consequently, the verdict of the jury is contrary to law and must be reversed.

The judgment is reversed and the cause is remanded with instructions to enter judgment for defendant.

Lybrook, J. (participating by designation) and

White, J. concur.

NOTE—Reported at 371 N.E.2d 414.