**William J. LAWSON, Appellant (Plaintiff Below),**

v.

**The HOWMET ALUMINUM CORPORATION, Philip Stiver, Larry L. Staub, and Donald Weldy, Appellees (Defendants Below).**

**No. 3–882A202.**

Court of Appeals of Indiana, Third District.

June 23, 1983.

James P. Knepp, Thomas S. Botkin, Hahn, Knepp & Botkin, South Bend, for appellant.

Paul E. Becher, Barnes & Thornburg, Elkhart, for appellees.

STATON, Judge.

When William Lawson was fired by his employer and accused of vandalizing company property, he sued his employer, The Howmet Aluminum Corporation, and the plant supervisor, Donald Weldy, for defamation. Larry Staub, a polygraph examiner who administered a polygraph examination to Lawson, was also sued by Lawson for negligently administering the polygraph examination. Lawson was fired by his employer on the basis of the polygraph examination results. After the trial court granted a summary judgment in favor of the Howmet Aluminum Corporation, Donald Weldy, and Larry Staub, Lawson brought this appeal which raises the following issues:

(1) Whether the trial court erred in granting summary judgment in favor of Weldy and Howmet on the basis that the statements made by them were protected by a qualified privilege;

(2) Whether this Court has jurisdiction over Lawson's appeal from a summary judgment entered in favor of Staub as to Lawson's defamation claim, which was granted on May 12, 1981; and

(3) Whether the trial court erred in determining that Staub owed no duty of care to Lawson in administering the polygraph examination.[1]

Affirmed in part; reversed in part.

On November 18, 1978, the offices of Howmet's Elkhart plant were vandalized. Because of a note left by the vandal, police suspected that an employee was responsible for the damage. When a handwriting analyst opined that the writing in the note was that of Lawson, he became the focus of the investigation. Howmet then asked Lawson to take a polygraph test. Howmet hired Staub to conduct the polygraph examination which, according to Staub, indicated that Lawson was lying when he denied in-

---

1. Lawson has also named as a defendant Philip Stiver, claiming that Stiver is liable for the acts of Staub. Because the trial court did not determine whether Staub was an employee of Stiver or an independent contractor, we decline Stiver's invitation to address that question.

volvement in the vandalism. Howmet then fired Lawson.

■ In reviewing a grant of summary judgment, we apply the same standard as that applied by the trial court. Summary judgment is appropriate only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). A genuine issue exists if the trial court would be required to resolve disputed facts. *Jones v. City of Logansport* (1982), Ind.App., 436 N.E.2d 1138, 1143. Summary judgment is likewise inappropriate if conflicting inferences arise from the facts. *McKenna v. City of Fort Wayne* (1981), Ind.App., 429 N.E.2d 662, 664. Any doubt as to a fact, or an inference to be drawn therefrom, is resolved in favor of the party opposing the motion for summary judgment. *Poxon v. General Motors Acceptance Corporation* (1980), Ind.App., 407 N.E.2d 1181, 1184. However, in order to preclude summary judgment, the conflicting facts or inferences must be decisive to the action or a relevant secondary issue. *Jones v. City of Logansport, supra.*

## I.

### Defamation

Lawson's defamation claim against Weldy and Howmet is based on the publication of statements that he was involved in the vandalism of the plant. Lawson alleges that, in the presence of James Lindley, Weldy accused Lawson of committing the vandalism and terminated Lawson's employment. Lawson also alleges that the same allegation was made to the Employment Security Division in an attempt to deny his application for unemployment compensation. The trial court, in granting summary judgment in favor of Howmet and Weldy, found that these statements, while defamatory *per se,* were protected by a qualified privilege.

■ Whether a statement is protected by a qualified privilege is a question of law, unless the facts are in dispute. *Shallenberger v. Scoggins-Tomlinson, Inc.,* (1982), Ind. App., 439 N.E.2d 699, 707. The defense of qualified privilege will protect a communication

> "made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty. . . ."

*Elliott v. Roach* (1980), Ind.App., 409 N.E.2d 661, 672, *quoting* 18 I.L.E. Libel and Slander § 52 at 475 (1959). Weldy, who was the plant supervisor, and James Lindley, who was the plant manager and Lawson's immediate supervisor had a common interest in the reason for Lawson's termination. Thus, Weldy has made a prima facie showing that the communication between them was protected by a qualified privilege.[2] *See Weenig v. Wood* (1976), 169 Ind.App. 413, 349 N.E.2d 235, 248. Likewise, the statement made to the employment security division is, by statute, protected by a qualified privilege. IC 1976, 22–4–17–9 (Burns Code Ed.); *Sanders v. Stewart* (1973), 157 Ind.App. 74, 298 N.E.2d 509.

■ The protection of a qualified privilege may be lost if the plaintiff shows that the speaker was primarily motivated by feelings of ill will toward the plaintiff, if the privilege was abused by excessive publication of the defamatory statement, or if the statement was made without belief or grounds for belief in its truth. *See Shallenberger, supra; Elliott, supra;* W. Prosser, *Law of Torts* § 115, pp. 792–96. While the good faith of the speaker is generally a question of fact, *Elliott, supra* at 673, in order to avoid summary judgment, Lawson must set forth specific facts showing that there is a genuine issue for trial. TR. 56(E).

---

**2.** Weldy also reported his suspicion to his supervisors, Gary Ghee and David Jones. The same analysis applies to these statements.

██ Lawson contends that these defamatory statements were made without a good faith belief in their truthfulness. In support of that contention, Lawson first relies on a letter written on behalf of Howmet by attorney Roger Benko to Lawson's attorney. The letter was an offer by Howmet to pay for another polygraph examination, to be performed by a different examiner. Lawson also relies on a statement of another Howmet employee who told Lawson, "don't take any more [polygraph] tests". Finally, Lawson alleges that after he requested the examination not be given by the police department, Staub, who was a police officer, administered the exam.

Lawson has failed to explain, and we fail to understand, how these statements and circumstances indicate that Weldy or his superiors did not have a good faith belief that Lawson was involved in the vandalism. Lawson's bald assertion that Weldy and Howmet acted in bad faith will not make it so. *Cf. Weenig v. Wood, supra* (despite reminder and admission that his accusations could not be proved, defendant repeated defamatory accusations). Because Weldy's statement is protected by a qualified privilege and Lawson has produced no evidence from which bad faith can be inferred, summary judgment was properly granted in favor of Weldy and Howmet.

Lawson also contends that the trial court erred in granting Staub's motion for summary judgment as to Lawson's defamation claim against him. That motion was granted on May 12, 1981, as follows:

"The Court further finds upon the motion for summary judgment of the defendants, Phillip Stiver and Larry Staub that there is no genuine issue as to any material fact relating to the issues of conspiracy and slander and that said defendants are entitled to judgment as a matter of law ... upon those issues; ... The Court further finds that there is no just reason for delay and that entry of judgment as to lessen all of the issues, claims or parties should be entered.

\* \* \* \* \* \*

"IT IS FURTHER CONSIDERED AND ORDERED upon the motion for summary judgment of the defendants, Phillip Stiver and Larry Staub, that the plaintiff recover nothing of said defendants upon their claims for conspiracy and slander...."

Staub contends that this Court is without jurisdiction over this issue because Lawson failed to file a timely motion to correct errors from this judgment. We agree.

██ Ind.Rules of Procedure, Trial Rule 56(C) reads, in pertinent part:

"A summary judgment may be rendered upon less than all the issues or claims[.] ... A summary judgment upon less than all the issues involved in a claim or with respect to less than all the claims or parties shall be interlocutory unless the court in writing expressly determines that there is not just reason for delay and in writing expressly directs entry of judgment as to less than all the issues, claims or parties. The court shall designate the issues or claims upon which it finds no genuine issue as to any material facts...."

Thus, if a summary judgment is granted with respect to less than all of the issues before the court, that judgment is final and appealable only if the trial court: (1) in writing expressly determines that there is no just reason for delay; and (2) in writing expressly enters judgment thereon. *Stanray Corp. v. Horizon Construction, Inc.*, (1976), 168 Ind.App. 164, 342 N.E.2d 645, 651; *Kasten v. Sims Motor Transport* (1975), 166 Ind.App. 117, 333 N.E.2d 906, 910. In this instance, the trial court expressly and in writing found that there was no just reason for delay and entered judgment in favor of Staub as to Lawson's defamation claim. Thus, Lawson's motion to correct errors was due sixty days from May 12, 1981.

██ A timely filed motion to correct errors is required to invoke the jurisdiction of this Court. *Gillian v. Brozovic* (1975), 166 Ind.App. 682, 337 N.E.2d 152, 154. Be-

cause his motion to correct errors was not filed until May 7, 1982, we are without jurisdiction to hear this portion of Lawson's appeal.[3]

## II.

### Negligence

Lawson sued Staub claiming that he negligently administered Lawson's polygraph test. Lawson claimed that had the polygraph test been properly given, he would have passed the test. The trial court granted Staub's motion for summary judgment on the basis that Staub owed no duty of care to Lawson. We disagree.

 It is axiomatic that the conduct of a person will give rise to an action for negligence only if that person owed a duty to the plaintiff to conform his actions to a standard of care. The existence of such a duty is a question of law. *Koroniotis v. LaPorte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656. The question presented in this case is whether a polygraph examiner, who is hired by an employer to administer a test to an employee, owes a duty of care to the employee in administering the examination.

 Generally, a legal duty arises from the nature of relationships between people. *Neal v. Home Builders, Inc.,* (1953), 232 Ind. 160, 111 N.E.2d 280; *Allied Fidelity Insurance Co. v. Lamb* (1977), Ind.App., 361 N.E.2d 174. Also relevant in determining the existence of a duty is one's knowledge of the situation or circumstances surrounding the relationship. *Snyder v. Mouser* (1971), 149 Ind.App. 334, 272 N.E.2d 627. Applying these principles to this case, we find that a polygraph examiner owes a duty

to the examinee to exercise reasonable care in conducting the polygraph examination.

 A duty arises from the examiner-examinee relationship of Staub and Lawson because of Lawson's interest in the results of the test, Staub's awareness of that interest, and the nature of the test. Lawson was accused of vandalizing his employer's office. His employer requested that he submit to a polygraph test, the results of which would be a factor in determining whether Howmet would continue to employ Lawson. Staub was hired to administer that test and was, or should have been, aware that Lawson would be affected by its outcome. Further, the reliability of a polygraph test is largely dependent upon the skill of the examiner. Therefore, Lawson is entitled to require that Staub exercise reasonable care in administering the test fairly and impartially.

The trial court erred in determining that Staub owed no duty of care to Lawson; the summary judgment granted to Staub on this issue is reversed.[4]

Affirmed in part; reversed in part.

HOFFMAN, P.J., and GARRARD, J., concur.

---

**3.** Because his defamation claim fails as to all of the defendants individually, Lawson's claim that they were involved in a conspiracy to defame him also fails. *See Indianapolis Horse Patrol, Inc. v. Ward* (1966), 247 Ind. 519, 217 N.E.2d 626.

**4.** Staub claims that Lawson has failed to offer any evidence that the specific acts of which Lawson complains caused Lawson to fail the

test. In reviewing a summary judgment, this Court ordinarily will confine its review to the propriety of the legal theory relied on by the trial court. *Fort Wayne, etc. v. City of Fort Wayne* (1980), Ind.App., 408 N.E.2d 1295. Because the trial court has not made a determination as to this issue, we will not address it at this time.